The Honorable Court, all rise! The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Court is now set in, and may be seated. Good morning. I want to welcome Judge Burroughs, who is joining us from the District of Massachusetts, and thank her for sitting with us today. My pleasure. Thank you, Judge. If you're ready, I can put us on the record. Thank you. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 211855, United States v. Wilfredo Isaac Delgado. So at this time, would Attorney Suero please come to the podium and introduce himself on the record to begin? Good morning. May it please the Court, I am Attorney Hector Suero Alvarez on behalf of Helen Wilfredo Isaac Delgado. May I reserve two minutes for rebuttal? You may. Thank you. Here the Court imposed a procedurally unreasonable sentence based on two facts that have no support on the record. First, it found that Mr. Isaac was not taking his mental health medications and had not even picked them up. Second, the Court determined that probation had spent more than $8,000 in his mental health treatment. There is no support on the record for these two findings, and the Court made a committed error in building its 36-month sentence from a DSR of 4 to 10 grounds on such shaky grounds. Do we know where the $8,000 number came from? Yes, Your Honor. As we indicated in our briefing, that $8,000 figure came from disclosures probation made before the final revocation hearing, but it was never in probation's motions. It never came up during the hearing, and there was no evidence about that figure until the Court raised its responsibility. If it had been on the record, do you think that's something we could consider? If it had been on the record with the appropriate context, it is something the Court could have considered. The issue here is that the Court does not have the proper context. So the $8,000 figure in a vacuum and out of context doesn't really say much about treatment. If we had the opportunity to address that, we could have submitted evidence or considered what other alternatives probation considered, what was the cost of the alternative treatment, and ultimately the probation, the government, and the Court all understood that this is a mental health issue, that that's the root of this problem. That's why the Court ordered an additional year of supervised release, including treatment. So the fact that it cost $8,000, it matters in the sense that the Court will still have to pay, it didn't have context, and Mr. Isaac does not have the resources, he is an indigent defendant. So how you factor the $8,000 is very much important. Taking the $8,000 figure out of context is simply unreasonable. You can, I just want to understand this. So you can, we can take into account obviously that it's a mental health issue and a mental health case. But do you think that the exact dollar figure spent by probation on treating somebody is a specific thing that should be considered? The amount of money, like you should get a different sentence if they spent $3,000 versus if they spent $12,000? Well, our position is that in this case, definitely not. But in general, one would think that that shouldn't be a relevant figure because whatever probation spent, that was a determination they made about the best course of treatment. And this is a hypothetical, and probation will still have to pay for the treatment that the Court ordered. So no matter how much they spend, they will still have to spend money either on incarceration, which will probably convey or require additional funding or would cost more than treatment. But the figure that you spend on treatment, it shouldn't matter, and much less in a situation like this where there is simply no context whatsoever. Now, regarding the other erroneous finding the Court made regarding the medication, there was no evidence on the record about that finding and supported that finding. Mr. Isaac, from the very start of the hearing, explained that he was taking his mental health medication, that he was participating in his mental health treatment, and he proffered that the records, that the treatment records that probation had disclosed before the final replication hearing showed as much. They showed that he was taking his medication. Council, excuse me, this is Judge Lopez, the voice from yonder. Can you hear me? Yes, I can, Your Honor. Yes, thank you. I'd just like to say that, respectfully, it seems to me you're avoiding what is for you the critical issue, and it's noted by the government in its brief, and that is that your client essentially admitted to all of the violations cited in two motions that brought this matter to court for the replication of supervised release. And, I mean, those documents describe a very troubling history of disregard for the conditions of supervised release, including constant use of drugs he should not be using, harassing two or three women in a violent and threatening way, behaving badly at the residential treatment center. I mean, it's a very troubling history on top of an already very troubling history, and Judge Basosa clearly relied on that as well as the items that you're focusing on. So how do you argue that Judge Basosa was not entitled to rely on all of those admissions to those alleged violations that are set forth in those other documents? Your Honor, in our briefing, we make the distinction that Mr. Isaac admitted to the violations, but he, from the very start of the hearing, challenged the factual allegations underpinning those violations. And he specifically challenged – I'm sorry, what does that mean? You admit to it, yet you challenge it? I don't understand that. You can – Mr. Isaac admitted that he – or conceded that he violated the conditions that probation identified, but he disputed at the hearing how he violated those conditions. So even though he took his medication and was participating and was doing the best he could, he failed – he conceded that he violated his conditions because the remaining conduct alleged in those motions, which we did not challenge, is sufficient to find that he violated the conditions. So here the issue was that there is a factual finding that has no support on the record, and you can't extricate that – those two improper findings from the district court's sentencing calculation. So we do concede that there are sufficient facts to find that he – that Mr. Isaac violated the conditions, just that not on these specific facts. He was taking his medication, and it was error for the court to factor that finding, as well as the $8,000 figure, into its sentencing calculation. We're not challenging the substantive reasonableness of the sentence here, just the procedural reasonableness. And from the record before the court, you cannot extricate those two erroneous findings from the sentencing calculus and determine that the sentence was substantively reasonable or was an appropriate sentence, because two improper factors were already factored into the mix. Is your objections preserved on both of those two? Yes, Your Honor. From the very start, we asserted that we were – that Mr. Isaac was participating in treatment. We affirmatively asserted that he was taking his medication. The government never challenged that, and when we objected, we objected to the court's characterization of his treatment. And that is – those – both objections, the $8,000 figure and the fact that he wasn't taking his medication, are part and parcel of our – the argument we had made from the very beginning, that Mr. Isaac was taking his medication, was participating in treatment, and was doing his best. So the court – when we objected to the court's characterization of his treatment, of his participation, that those – that necessarily includes those two erroneous findings. I'm not – I'm not sure I saw the preservation in the same way that you did. Could you speak more specifically about the $8,000 figure and how that objection is preserved? Of course, Your Honor. The $8,000 figure never came up in the – neither in probation's motions or the record or the – Yes, but when did you object to it? We did not specifically object to the $8,000. It just is subsumed in the court's – in our objection to the court's characterization of the lack of treatment and how treatment wasn't – he wasn't participating in treatment. I see. Your time is – your time is up, but Judge Lopez, do you have any further questions? No, no further questions. Thank you. Thank you. Thank you, counsel. At this time, if Attorney Conner would please introduce himself on the record to begin. May it please the court, Greg Conner for the government. This court should affirm the revocation sentence because once a ZOC began the hearing by admitting to the violations of supervised release, the remainder of the hearing pertained to the second phase of the proceeding, which was the sentencing phase. And the district court permissibly considered the information in front of it in conducting that phase. Now, both parties filed 28J letters and not only referenced the Portel Marquez case, both parties agreed that Portel Marquez will be relevant to this court's decision. We just agree with – we just disagree about what side that case favors. But in terms of the relevance of that case, I think it's important to consider the statement at the beginning of that ZOC's case because they're virtually identical. And if it's okay, I'm just going to quote them. In the Portel case, the attorney began, Your Honor, he is not contesting the violations to mandatory conditions 1 and 2, which were that he must not commit another crime. This is docket entry 70, the motion filed by the probation officer. In his ZOC's case, Your Honor, after review of both of the motions of the probation officer notifying violations at docket entry 108 and 117, the defendant will not be contesting these violations, but we would like to be heard. They are virtually identical. They are admissions that he committed the violations of supervised release. Now, importantly, in this case, one of the violations of supervised release was that he meaningfully participate in drug and mental health treatment programs. So when he admitted to that, he admitted both to the details in the probation officer's motions and that he failed to participate in treatment, namely by not taking his medication. And that's what the probation officer's motion said. And you know that the district court was referring to that motion because at page 49 of the appendix, the district court specifically identifies that motion and that violation. So under Fortel Marquez, under the reasoning and the holding of that case, the district court was permitted to consider the substance of those motions. So the $8,000 bothers me. It bothers me that the amount of money that you spend should be relevant. You say it's not preserved, but I think there's a difference between relying on the $8,000 and relying on the fact that you're not participating in drug treatment as evidenced by the fact that resources have been expended and you're not participating. So are you relying on the fact – was the judge in your view relying on $8,000 or was he relying on the fact that resources have been expended but the defendant's not compliant? The latter, Your Honor. And I think Judge Lopez had mentioned this. There is a long track record in this case, and Izak demonstrated an unwillingness to meaningfully participate, which is why he violated that condition. Now as far as whether or not the mention of $8,000 is impermissible because it wasn't – the fact that he refused his medication was in the motions, but the specific figure of the cost and that probation officer had expended resources, that was in the motion. The cost was not, but I think Izak is simply asking the court too much to say that the district court committed plain error by referring to that number. Here's why. In the reply brief, Izak says that the government has acknowledged that the treatment records were not made a part of the district court record, right? This is the reply brief at page 10. But if you look at the appendix at page 43, Izak's counsel says, Your Honor, after probation officer Santana kindly provided us with monthly treatment reports of Clinica de Tratamiento in Bayamón, I just wanted to highlight, and then goes on to highlight the portions that he thinks favors him. So in other words, not only is he acknowledging that this information was provided to him, not only is he acknowledging that he thinks it's relevant to the sentencing proceeding, he's saying, Yes, I was disclosed this information, I've been able to review it, and I'm going to mention it at the hearing, but the second anyone else does, it's plain error that requires vacating a sentence. Now, one, that doesn't pass the straight face test, and two, it doesn't gel with this court's case law, which says that the fact that a district court judge mentions information that's not explicitly in the record is only a problem when it's not disclosed to the defense and when it's not subject to adversarial testing. Again, he was able to adversarially test the portions of this off-record material that he wanted to highlight. He is just expressing grievance that there were portions of the off-record material that the district court didn't think favored him. So both under this court's precedent and I think under a basic notion of fairness, this court should not allow him to establish a sentencing error by bringing up off-record material and then saying that the district court errs by also referring to that material. I guess I'm a little bit confused. So is there anything in the record that supports the fact that he wasn't taking his medication as probation stated in its motion? No, we're relying on the motion by the probation officer. But again, the condition that he admitted to was that he participate in that. The description of how he failed to do that was in the motion and under this court's holding in Portel Marquez, once you admit to the violation or once you fail to challenge what the probation officer has said, that reaches the level of indicia of reliability that this court has said a district court may point to. So basically, the substance of what was in the probation officer's motions, that was all permissible. And think of it this way, it's perfectly logical that when both parties come into court and there is no challenge or no dispute as to the probation officer's motions, a district court judge is going to think the substance of those motions is uncontroversial. I want to briefly address a case that ISAC relies on. This is the Ramos-Carreras case. Again, I encourage the court to closely review Portel and the Ramos case. I think Portel is much more on point. Ramos is not going to apply. And it's mostly not going to apply because in the relevant motion in the Ramos case, there was virtually no information. The information was that he had been charged with lewd acts at the state level, and then it later was revealed that he down pleaded to attempted lewd acts. So there's no information that the – this court said there was no information that the district court could point to attempted lewd acts. So the extremely – what this court called inflammatory details of the sexual offense in that case were impermissible, off-record material. The big difference in this case is that there is a lot more – there is a lot more substance to the motions, and he is admitted to that substance by way of his admission at the beginning of the hearing. And with the time I have remaining – Counsel, counsel, if I may, let me ask you about that. I mean, the – I think we have a situation here where, yes, the – one of the motions details the harassment of his former girlfriend, as it's described in the motion. But the motion also discloses, if I understand it correctly, that any charges, commonwealth charges arising from that conduct were actually then dismissed by the commonwealth court. Is that correct? This conduct did not result in any convictions under commonwealth law. Is that correct? I believe you're correct. There were several charges made at the state level, and you alluded to two or three ex-girlfriends earlier. It is three. But even though there wasn't a conviction, there were several restraining orders. And beyond the fact that he may have had charges dismissed or, you know, reached agreements at the state level for a restraining order rather than a conviction, I don't think that gets him around the holding of Portel Marquez that once you admit to the violations and there's no other apparent challenge to the motions a probation officer makes, then the district court is allowed to consider them. And I do want to quickly say that a lot of what the opening brief is premised on is the idea that, actually, he did push back on the – his argument that he did push back on the probation officer's motions. And that's just not true, and it might come down to a careful reading of the record. But what he was doing was reviewing the record and anything that – because, again, we're past the violation determination phase, everything relates to the sentencing phase, and all of his arguments in mitigation were an attempt to put a positive spin on what could be deemed negative. So, for example, he says – he acknowledges this serial harassment of ex-girlfriends, but he says, yes, it was harassment, but it wasn't violence against them. He says that, yes, he has struggled with mental health and substance abuse, but some of the treatment reports indicate satisfactory progress. He says, actually, several times, yes, there is a – there have been restraining orders against my client, but that restraining order is a good thing because it means that he can't contact his victim, even though, if you look in the record, he has violated restraining orders in the past. So these arguments, one, didn't preserve any objection for purposes of appeal, and, two, they were not in any way a challenge to the probation officer's motions. They were his sentencing mitigation argument. Your time is up. I'm sorry, can I ask one more question? But he admits to the violations and he admits to the motion, but he doesn't admit to the $8,000. That's an external fact. So, again, I'm going to ask you the same question I asked your counsel. Is that – do you see a difference between the judge relying on $8,000 and relying on the idea that the expenditure of $8,000 is evidence of the fact that he's not compliant with the drug restriction? I think the driving consideration for the district court is that there was a cost to the probation office, and he demonstrated, and despite that cost and those efforts made for his treatment, he demonstrated an unwillingness to participate in treatment. But the costs aren't in the motion. Are you equating, like, costs and effort? Like, the cost is the evidence of the effort, or are you saying that he could rely on the cost? I'm saying the – well, sort of both. I'm saying the district court – the key consideration was that there was this cost to probation. I don't think the specific figure matters, but as far as whether the district court could mention the figure, the answer is yes, because that information, under this court's precedent in Bramley and several other cases, when information that's not in the record is mentioned by a district court, it's only a problem if that wasn't disclosed to the defendant and if he didn't have an opportunity to challenge it, and he did in this case. Thank you. Thank you. Thank you, counsel. At this time, Attorney Suero-Alvarez, if you would reintroduce yourself on the record to begin, you have a two-minute rebuttal. Good morning. Attorney At this rate, I'll let it on behalf of the patent, Mr. Esaccio. I very quickly want to make three points. First, the government's reliance on Portel is very different here. There was a judgment from the panel already conceding that the operative facts were not violated, but furthermore, and it's crucial here, and I think the government recognizes, this case hinges on a close reading of the record. The court in Portel looked at the record and determined based on that record that the defendant was not objecting to the allegations because any arguments he made were premised on accepting the allegations. Here, it was very clear that we were challenging the factual allegations in that motion, and probation's motions are not crystal clear in terms of what facts correspond to which allegations. Mr. Esac was receiving mental health treatment for substance abuse and for domestic violence, so the fact that he committed the domestic violence incident and he tested positive is sufficient to find that he violated those conditions. What we specifically challenged was any notion that he was not participating in treatment or that his treatment failed because of a lack of effort, and taking his medication is essential for that, and that's why we asserted that. Counsel, I continue to not understand this distinction that you're making, that we will admit to the allegations in the motion to revoke, and yet we are contesting the factual underpinnings. I just don't understand that. For example, the motion describes the ongoing harassment of his former girlfriend, his abusive treatment of two other women. On the one hand, he appears to not contest those, and yet you're saying that in some fashion he is disputing the facts that are set forth in such detail in the motion? Is that what you're saying? And most significantly, because he is contesting that, you're saying that the judge could not rely on that history of domestic violence? Your Honor, we are not contesting the domestic violence issue and we're not challenging the court's reliance on the domestic violence incident. We are conceding the violations themselves, but the factual allegations in probation's motions are not factual determinations. They are allegations. Once we raised the issue and asserted that Mr. Isaac was participating in treatment, was taking his medication, and that his records reflected as much, then it was incumbent on the government. It was the government's burden to challenge that fact, that allegation. That never happened. That is exactly what the government is asking this court to do on appeal, by repeatedly citing or sort of saying we should have provided those records at the court or we had that opportunity. The government was the one who had the opportunity to challenge that factual assertion at the district court, and it shows not to. Thank you. Thank you. That concludes argument in this case. Counsel is excused.